UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00099-JAW |
| | ) | |
| CARLOS PEMBERTON | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a forty-six-month sentence for possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the inmate has not shown extraordinary and compelling reasons to justify his release from incarceration and the factors under 18 U.S.C. § 3553(a) do not support compassionate release.

**I.  BACKGROUND**[1]

  **A.  Factual Background**

  **1.  Carlos Pemberton's March 26, 2018 Possession of Drugs for Distribution**

On March 26, 2018, law enforcement in Down East Maine performed a welfare check on some children at the request of their grandmother. *Id.* ¶ 9. The children's mother was incarcerated, and their grandmother expressed concern to law

---

[1] The Court draws the facts concerning Mr. Pemberton's offense from the Revised Presentence Investigation Report (PSR) that U.S. Probation and Pretrial Services (PO) prepared in anticipation of his sentencing. *Restricted U.S. Probation Filing*, Attach. 3, *Revised Presentence Investigation Report* (ECF No. 185) (*PSR*). At Mr. Pemberton's sentencing, the Court adopted the PSR with minor factual changes concerning (1) the converted drug weight (CDW) of Xanax that Mr. Pemberton possessed, (2) the facts underlying Mr. Pemberton's disciplinary incidents while incarcerated, and (3) Mr. Pemberton's criminal history category. *Restricted U.S. Probation Filing*, Attach 2, *Statement of Reasons* at 1.

enforcement about the amount of traffic at the children's residence and her fear that a man named "Pepa" was selling drugs there. *Id.*

As a result of the welfare check, Mr. Pemberton was arrested in a bedroom at a residence on Alder Lane in Indian Township, Maine with $3,180 in small bills on his person. *Id.* Inside a duffel bag owned by Mr. Pemberton, law enforcement found approximately one pound of marijuana, $4,086, nine small bags of heroin each containing 0.4 grams of heroin for a total of 3.6 grams of heroin, a Comet toilet cleaner container with a false bottom, forty-six two-milligram Xanax pills, and a bag with 18.7 grams of a substance containing heroin and fentanyl. *Id.* Authorities also seized several cell phones from the residence. *Id.* A search of the cellphone revealed text messages consistent with drug trafficking. *Prosecution Version of the Offense* at 1 (ECF No. 157) (*Prosecution Version*). Law enforcement found no firearms in the residence but did locate a .40 caliber Smith & Wesson bullet in the bedroom where they arrested Mr. Pemberton. *PSR* ¶ 9.

Another occupant of the Indian Township residence possessed a metal wallet containing heroin paraphernalia. *Id.* Authorities learned that Mr. Pemberton gave that occupant two "tickets" of heroin, or approximately 0.2 grams, earlier that day. *Id.* A cooperating witness would testify that earlier on March 28, 2018, Mr. Pemberton not only possessed heroin, but also distributed it. *Prosecution Version* at 1.

## 2. Mr. Pemberton's Connections to the Perry-Padilla DTO

Mr. Pemberton was known to law enforcement. His PSR details his impressive scope of drug dealing activity with different individuals and organizations over the years preceding his arrest in Indian Township. *PSR* ¶¶ 5-12. A fair reading of the PSR suggests that Mr. Pemberton may have been part of a drug trafficking organization (DTO) led by Luis Padilla and Damian Perry in Penobscot County, Maine. *PSR* ¶ 5. However, direct evidence of Mr. Pemberton's involvement in this conspiracy is scant and, despite his peripheral involvement, the PO concluded "there [was] insufficient evidence to determine by a [preponderance] of the evidence what [Mr. Pemberton] was personally involved in, or what conduct arose out of his joint agreement with others that was foreseeable to him that is relevant conduct to the instant offense." *Id.* ¶ 12. Moreover, there was a "lack of evidence to show [Mr.] Pemberton was involved in trafficking in a continuous nature." *Id.*

Among other facts recited in the PSR are statements from a confidential source (CS) that Mr. Padilla, Mr. Perry, and Mr. Pemberton began trafficking drugs out of Sherri Chen's[2] house for an unknown duration; however, they moved to a different residence around November 2016. *Id.* ¶ 10. According to some CSs, Mr. Pemberton sometimes transported heroin and cocaine base from Waterbury, Connecticut to

---

[2] Ms. Chen was separately charged and convicted in this Court of maintaining a drug-involved premises for use and distribution of heroin and cocaine base in violation of 21 U.S.C. § 856(a)(1). *See United States v. Chen*, No. 1:18-cr-00082-JAW. On December 3, 2018, the Court sentenced Ms. Chen to eighteen months of incarceration, three years of supervised release and a $100 special assessment. *Id. J.* (ECF No. 32).

Maine. *Id.* Another CS said that Mr. Pemberton paid the CS a couple grams of heroin for transportation around Bangor, Maine. *Id.*

Also, in June 2018, law enforcement learned that, in the years prior to June 2018, Mr. Pemberton was "partners" with another individual, Rene Montalvo, in Connecticut who distributed heroin. *Id.* ¶ 11. Mr. Pemberton and Mr. Montalvo planted a third person in Maine to sell heroin for their organization. *Id.* Authorities do not know if that DTO is related to the Perry-Padilla DTO, although there are overlapping conspirators. *Id.* About two to three years before June 2018, Mr. Montalvo cut Mr. Pemberton out of that DTO. *Id.*

### 3. Post-Plea Drug Involvement While Incarcerated

After Mr. Pemberton pleaded guilty on January 7, 2020 to heroin distribution, he was incarcerated at the Piscataquis County Jail (PCJ) pending the imposition of sentence. *Id.* ¶ 15A. At his October 22, 2020 sentencing hearing, the Court found that in March 2020, Mr. Pemberton was involved in some fashion in the smuggling of Suboxone strips and cocaine into the PCJ and that his unauthorized possession of a cellphone while at the PCJ was connected to his jail-based drug smuggling. *Statement of Reasons* at 1 (ECF No. 182). Based on these findings. the Court denied acceptance of responsibility to Mr. Pemberton because he had continued to engage in criminal activity after pleading guilty and before his sentencing hearing. *Id.* Attach. 1, *Findings Affecting Sentencing* at 1-2.

### B. Procedural History

On July 18, 2018, a District of Maine grand jury issued a one-count indictment charging Mr. Pemberton with possession with intent to distribute a substance containing heroin and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *Indictment* (ECF No. 2). Although Mr. Pemberton initially pleaded not guilty and nearly went to trial, on January 7, 2020, he pleaded guilty to the heroin distribution charge. *Min. Entry* (ECF No. 159). On October 22, 2020, the Court sentenced Mr. Pemberton to forty-six months imprisonment, three years supervised release, a $100 special assessment, and a $5,000 fine. *Min. Entry* (ECF No. 180); *J.* at 2-7 (ECF No. 181).

On April 14, 2021, Mr. Pemberton filed a pro se motion for compassionate release and requested appointment of counsel. *Mot. for Reduction of Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i)* (ECF No. 183). On April 20, 2021, the Court appointed Attorney Donald Brown to represent Mr. Pemberton. *Appointment of Counsel & Scheduling Order* (ECF No. 186). On May 6, 2021, Attorney Brown filed an amended motion for compassionate release on behalf of Mr. Pemberton. *Def. Carlos Pemberton's Mot. for Compassionate Release/Or Alternatively, Modify His Sentence to Home Confinement* (ECF No. 191) (*Def.'s Mot.*). On May 12, 2021, the Government responded in opposition to Mr. Pemberton's motion. *Gov't's Obj. to Def.'s Mot. for Compassionate Release/Or Alternatively, Modify His Sentence to Home Confinement* (ECF No. 192) (*Gov't's Opp'n*). Mr. Pemberton did not file a reply.

## II. THE PARTIES' POSITIONS

### A. Carlos Pemberton's Motion

Mr. Pemberton first contends that he has "exhausted his administrative remedies" by filing "a request for compassionate release with the superintendent of [FCI] Danbury, which was denied." *Def.'s Mot.* at 3-4. Therefore, he urges the Court to consider the merits of his motion for compassionate release. *Id.* at 4.

Turning to the merits, Mr. Pemberton argues that he "is eligible for compassionate release," *id.*, and that his obesity, asthma, "compromised immune system," and risk of serious complications from COVID-19 infection are extraordinary and compelling reasons for his release. *Id.* at 2, 4-7. He stresses that he is "particularly vulnerable in the prison setting" due to its dense population and inability to practice effective social distancing. *Id.* at 7. Mr. Pemberton cites a number of cases considering an inmate's health diagnoses and conditions of confinement as relevant factors supporting a grant of compassionate release. *Id.* at 7-8.

Separate from his medical conditions, Mr. Pemberton insists the COVID-19 pandemic is an extraordinary and compelling reason to release him under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 8. Citing caselaw almost exclusively from the spring of 2020, and none from 2021, Mr. Pemberton says "the number of courts agreeing the COVID-19 pandemic constitutes an extraordinary and compelling reason for release is vast and continues to grow exponentially." *Id.* at 9.

Mr. Pemberton also concludes that "18 U.S.C. § 3142(g) weighs in favor of release." *Id.* at 11. While "Mr. Pemberton concedes that his plea to a drug charge . . . would weigh against release" he claims "a multitude of factors weigh in favor of release." *Id.* at 12. He notes that "[t]his Court made no findings, nor did the PSR indicate that Mr. Pemberton is violent or presents a danger to society." *Id.* Moreover, Mr. Pemberton claims that he "has a suitable place to reside if he was released, in his home state" but does not detail specific living arrangements. *Id.* In addition, Mr. Pemberton says that "any concerns that the Court would have for [him] are alleviated by the fact that he will be on intense supervision upon his release and he has an incentive to stay out of prison." *Id.*

As an alternative to compassionate release, Mr. Pemberton asks the Court to modify his sentence to a term of home confinement. *Id.* at 13-16. He says that the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No 116-136, 134 Stat. 281 (2020), also known as the "CARES Act," "places decision making authority [concerning home confinement] solely within the discretion of the Attorney General and Director of the Bureau of Prisons (BOP)" but nevertheless "asks the Court to modify his sentence to allow for home confinement." *Id.* at 13. Mr. Pemberton says that home confinement is appropriate because "he is at a higher risk of [COVID-19] not just due to his health, but also his race." *Id.* at 15. He contends that "as a 44-year old Black or African American male" he is "is inarguably a 'vulnerable inmate.'" *Id.* at 16. Thus, he asks the Court to exercise its authority under

7

18 U.S.C.§ 3624(b)(4)[3] to recommend that he be incarcerated at home and "modify his sentence to home confinement in the event this Court denies the Motion for Compassionate Release." *Id.*

### B. The Government's Opposition

The Government urges the Court to deny Mr. Pemberton's motion. *Gov't's Opp'n* at 1. Regarding extraordinary and compelling reasons, the Government argues Mr. Pemberton's obesity, asthma, and hepatitis C and risk of COVID-19 would "normally present 'extraordinary and compelling' reasons for release." *Id.* at 9. However, the Government says Mr. Pemberton's case is distinguishable because on April 20, 2021, he declined the COVID-19 vaccine. *Id.* (citing *Gov't's Opp'n*, Attach 4, *BOP Health Servs. Clinical Encounter* at 5, 79). According to the Government, "the Court should decline to find that [Mr. Pemberton] has demonstrated extraordinary and compelling circumstances warranting compassionate release" because "it is no longer his obesity, asthma or hepatitis C that creates a substantial risk to [his] health should he contract COVID-19; it is his own conduct." *Id.* at 9-10.

The Government next contends that the 18 U.S.C. § 3553(a) factors do not support release. *Id.* at 11. The Government highlights Mr. Pemberton's extensive criminal history and involvement in drug trafficking offenses. *Id.* In addition, the Government reminds the Court of Mr. Pemberton's conduct while incarcerated at the

---

[3] This statutory provision concerns the Director of the BOP's discretion to exempt prisoners from a statutory General Education Development requirement and is not pertinent to Mr. Pemberton's request for home confinement. 18 U.S.C. § 3624(b)(4). The Court suspects that Mr. Pemberton intended to cite 18 U.S.C. § 3624(c)(2), which grants the BOP the authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."

8

Piscataquis County Jail. *Id.* This included the discovery of a package containing twenty to thirty suboxone strips sent to the jail, which corrections officers believe Mr. Pemberton facilitated. *Id.* In addition, Mr. Pemberton was found in possession of contraband cell phones, and other inmates were setting up currency deposits of $100 in Mr. Pemberton's commissary account. *Id.* The Government points out that, given these facts, the Court previously found Mr. Pemberton was involved in smuggling drugs into the Piscataquis County Jail. *Id.*

Turning to the nature and circumstances of the offense, the Government first recounts Mr. Pemberton's offense and then observes that Mr. Pemberton, by his own admission, only used marijuana. *Id.* at 12. Therefore, the Government observes that Mr. Pemberton "was profiting off other people's addictions and suffering." *Id.* In addition, the Government says that "[t]he conclusion that [Mr. Pemberton] poses a danger to the community if released after serving only 43.2% of his 46-month sentence is wholly supported by the Court's observations concerning the nature and circumstances of this offense." *Id.* In much the same vein, the Government insists that releasing Mr. Pemberton less than a year after his sentencing "would not sufficiently deter him." *Id.*

The Government objects to Mr. Pemberton's request for home confinement for the same reasons that it objects to his motion for compassionate release. *Id.* at 13.

### III. LEGAL STANDARD

The Court has addressed the legal standard for deciding a motion for compassionate release on numerous occasions. *See, e.g.*, *United States v. Crosby*,

No. 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)", and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . .." 18 U.S.C. § 3582(c)(1)(A).[4]

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)).

## IV. DISCUSSION[5]

### A. Extraordinary and Compelling Reasons

---

[4] The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions brought by the Director of the Bureau of Prisons under § 3582(c)(1)(A). However, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act." *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1. This Court agrees with the vast majority of courts that have held § 1B1.13 "'provides helpful guidance' but 'is not ultimately conclusive given the statutory change.'" *United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)); *see United States v. Trenkler*, Cr. No. 92-10369 WES, 2021 U.S. Dist. LEXIS 87567, at *16 (D. Mass. May 6, 2021) (collecting cases).

[5] 18 U.S.C. § 3582(c)(1)(A) contains an administrative exhaustion requirement that bars some compassionate release motions as untimely. *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *9-10 (D. Me. Feb. 3, 2021). However, the Government may waive or concede exhaustion. *Id.* at *10. Here, the Government conceded Mr. Pemberton complied with the exhaustion requirement and the Court therefore considers Mr. Pemberton's motion on the merits. *Gov't's Opp'n* at 8 n.8.

10

To grant Mr. Pemberton's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. Mr. Pemberton claims that his risk of serious complications from a potential COVID-19 infection is an extraordinary and compelling reason for his release in light of his diagnoses of obesity, asthma, and hepatitis C. *Def.'s Mot.* at 2, 6. The Court disagrees. It reviewed Mr. Pemberton's medical records, applicable guidance from the Centers for Disease Control and Prevention (CDC), and conditions at FCI Danbury, where Mr. Pemberton is incarcerated. In light of Mr. Pemberton's vaccine refusal, the low incidence of COVID-19 infections at FCI Danbury, and the high rate of vaccinations among inmates at FCI Danbury, the Court concludes Mr. Pemberton failed to show extraordinary and compelling reasons justify his release.

The Court first considers Mr. Pemberton's risk of serious illness from COVID-19. According to the CDC, several factors increase a person's risk of severe illness from COVID-19. Arguably, the most decisive is age. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 14, 2021). Generally, the risk of COVID-19 increases as a person ages and over eighty percent of deaths occur in people aged sixty-five or older. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited

July 14, 2021) (*CDC COVID Med. Conditions*).  Fortunately, Mr. Pemberton is forty-four years old and does not fall within the age-related high-risk category.

Certain medical conditions may also increase a person's risk of serious COVID-19 infection.  *Id.*  Mr. Pemberton's medical records reflect diagnoses of asthma, obesity, and acute hepatitis C.  *Gov't's Opp'n*, Attach. 4, *BOP Health Servs. Clinical Encounter* at 49 (*Med. R.*).  According to the CDC, obesity, moderate-to-severe asthma, and liver disease, though not specifically hepatitis C, may increase an individual's risk of serious illness from COVID-19.  *CDC COVID Med. Conditions.*

Despite his medical conditions, the Court concludes Mr. Pemberton failed to show extraordinary and compelling reasons justify his release.  On April 20, 2021, Mr. Pemberton declined to receive the Moderna COVID-19 vaccine and had "been counseled on the risks and benefits of the COVID-19 vaccine by a pharmacist." *Med. R.* at 5.  The Court finds Mr. Pemberton's vaccine refusal weighs against a finding of extraordinary and compelling reasons.

According to the CDC, COVID-19 vaccines are safe and reduce the risk of COVID-19 infection and the severity of infections.  *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited July 14, 2021) ("COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death").  Moreover, there is a growing consensus that an inmate's decision to refuse a potentially life-saving vaccination does not give rise to extraordinary and compelling reasons for release. *See, e.g., United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 U.S. Dist.

LEXIS 66670, at *16 (D. Me. Apr. 6, 2021) ("Most courts have held vaccine refusal against defendants moving for compassionate release"); *see also United States v. Cain*, No. 1:16-cr-00103-JAW, 2021 U.S. Dist. LEXIS 104467, at *16 (D. Me. June 3, 2021) (finding "[t]he risk-benefit analysis in favor of inoculation . . . so overwhelming that the Court holds [the defendant's] refusal to be vaccinated as a factor against his motion for compassionate release"); *United States v. Church*, Crim. No. ELH-17-322, 2021 U.S. Dist. LEXIS 115526, at *25 (D. Md. June 21, 2021) (collecting cases).

The Court is not ordering Mr. Pemberton to undergo a COVID-19 vaccination. Such an order would have constitutional implications. *See Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016); *Missouri v. McNeely*, 569 U.S. 141 (2013); *Sell v. United States*, 539 U.S. 166 (2003); *Schmerber v. California*, 384 U.S. 757 (1966); *United States v. Manubolu*, 478 F. Supp. 3d 32 (D. Me. 2020). Mr. Pemberton has the right to refuse medical treatment, including a shot in the arm. *United States v. Martin*, No. 1:05CR21, 2021 U.S. Dist. LEXIS 57421, at *5-6 (N.D. W. Va. Mar. 26, 2021). Nevertheless, Mr. Pemberton bears the burden to show extraordinary and compelling reasons justify his release, and the Court will not reward Mr. Pemberton for turning down a vaccine that may save his life, reduce the potentially severe impact of COVID-19 infection on himself, and limit the risk he will spread the virus to others.

Mr. Pemberton raised several other arguments in favor of his release, but the Court concludes they lack merit. First, Mr. Pemberton says that the COVID-19 pandemic is itself an extraordinary and compelling reason for his release, regardless of his personal vulnerability to the virus. *Def.'s Mot.* at 8-11. The judges of this

District have repeatedly rejected this argument, and the Court does so again here. *See, e.g., United States v. Dent*, No. 2:15-cr-10-DBH-01, 2020 U.S. Dist. LEXIS 194814, at *3 (D. Me. Oct. 21, 2020) (citing *United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4-5 (6th Cir. Sept. 17, 2020)) ("The COVID-19 pandemic concerns many people in this country, but it is not, in and of itself, an extraordinary and compelling reason to justify release from a prison sentence"); *see also United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12-13 (D. Me. June 11, 2020). As Mr. Pemberton refused a vaccine that would have effectively eliminated his risk of serious COVID-19 infection, the natural consequences of his own actions are not an extraordinary and compelling reason for release.[6] *See Cain*, 2021 U.S. Dist. LEXIS 104467, at *17.

Second, Mr. Pemberton argues that "as a 44-year old Black or African American male" he is "is inarguably a 'vulnerable inmate.'" *Def.'s Mot.* at 16. As Chief Judge Levy of this District observed, "[i]t is true that, as a demographic matter, people of color are being disproportionately affected by COVID-19." *United States v. Hassan*, No. 2:16-cr-00084-JDL, 2020 U.S. Dist. LEXIS 195468, at *6 (D. Me. Oct. 21, 2020) (quotation marks omitted). However, as Judge Levy further explained, the studies concerning racial disparity in COVID-19 outcomes conclude that "these racial disparities arise from longstanding and systemic social and economic disparities,

---

[6] Mr. Pemberton's motion includes several statements that, if released, he could assist his wife and son who have health conditions. *Def.'s Mot.* at 2-3. However, Mr. Pemberton failed to submit evidence corroborating the assertions about his family members' medical conditions and the care they require. Faced with a lack of corroborating evidence, the Court concludes that Mr. Pemberton has failed to demonstrate the need for him to serve as a caretaker for his wife and son is an extraordinary and compelling reason for his release.

14

such as access to healthcare." *Id.* at *7. The studies "do not suggest that Black individuals are otherwise inherently predisposed to COVID-19 infection and complications . . . [and] they do not aid in assessing the individual medical risk for a person whose medical condition, social situation, and access to healthcare are specifically known." *Id.*

The Court concurs with Chief Judge Levy's analysis in *Hassan* and concludes Mr. Pemberton's race combined with his risk of COVID-19 infection do not constitute an extraordinary and compelling reason for his release. In this case, Mr. Pemberton did not assert or offer evidence showing that he lacks access to adequate healthcare. On the contrary, the record unequivocally establishes that Mr. Pemberton had access to a potentially life-saving vaccine while incarcerated and refused it.

A final consideration is the prevalence of COVID-19 at the BOP facility where Mr. Pemberton is incarcerated. FCI Danbury currently reports no active COVID-19 infections among inmates or staff. *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last visited July 14, 2021). However, since the COVID-19 pandemic began, one hundred fifty-five inmates and eighty-three BOP staff at FCI Danbury have tested positive for COVID-19. *Id.* Unfortunately, one inmate has died. *Id.* In addition, one hundred eighty staff and five hundred eighty-one inmates at FCI Danbury are fully vaccinated against COVID-19. *Id.* Given the extremely low current incidence of COVID-19 cases at FCI Danbury and high rates of vaccination in the facility, the Court would find no extraordinary and compelling

15

reasons exist to release Mr. Pemberton even if he had not himself refused a COVID-19 vaccination.

On balance, the Court concludes Mr. Pemberton's vaccination refusal, the lack of active COVID-19 infections at FCI Danbury, and the high rate of vaccinations at FCI Danbury do not support a finding of extraordinary and compelling reasons to release Mr. Pemberton. This finding is sufficient to deny Mr. Pemberton's motion for compassionate release.

### B. The Section 3553(a) Factors

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court has also considered whether the 18 U.S.C. § 3553(a) factors favor Mr. Pemberton's release. They do not. Although the Court considered each factor, it finds the need for specific deterrence, the nature and circumstances of Mr. Pemberton's offense, the need to protect the public, and the need for just punishment are the most relevant considerations in Mr. Pemberton's case.

As for specific deterrence, in addition to the offense-of-conviction, Mr. Pemberton has numerous prior convictions for drug offenses and weapons offenses while he possessed drugs. *PSR* ¶¶ 29, 31-34, 36. Specifically focusing on his drug-related convictions, a summary of Mr. Pemberton's criminal history reveals: (1) at age twenty, he was convicted of criminal sale of drugs (cocaine) in the state of New York and imprisoned for one year, *id.* ¶ 29; (2) at age twenty-seven, he was convicted of criminal possession of a weapon in the state of New York, received a time served sentence, and had 1.5 ounces of cocaine and some marijuana on his person, *id.* ¶ 31;

16

(3) at age thirty, he was convicted of criminal possession of drugs (cocaine) in the state of New York and was fined $160, *id.* ¶ 32; (4) also at age thirty, he was convicted of criminal possession of a weapon in the state of New York and had a substance alleged to be crack cocaine on his person, *id.* ¶ 33; (5) at age thirty-two, he was convicted of criminal possession of marijuana and cocaine in the state of New York and was sentenced to time served, *id.* ¶ 34; (6) at age thirty-four, he was convicted of possession with intent narcotics in the state of Connecticut and was fined $750, *id.* ¶ 36; and (6) at age thirty-eight, he was subjected to a criminal forfeiture of $13,958 and fined $400 in the state of Maine when he was found in a motel in Ellsworth, Maine along with two other persons where law enforcement found $13,957 in cash, 142 Oxycodone pills, and five cellphones. *Id.* ¶ 38. Having now been convicted of seven drug-related crimes in three states and in state and federal court, the Court is concerned that Mr. Pemberton has spent much of his adult life dealing or possessing illegal drugs. Moreover, notwithstanding these prior convictions, before this federal conviction, Mr. Pemberton has served very little time in prison and it is apparent that his prior encounters with the criminal justice systems in New York, Connecticut and Maine did not deter his continuing criminal conduct. *Id.* ¶ 38.

In addition to this unenviable criminal record of drug dealing, the Court has considered the nature and circumstances of this offense. Because the Court held an evidentiary hearing on December 12, 2019, where the circumstances of Mr. Pemberton's drug dealing were detailed, the Court is aware that Mr. Pemberton was staying at and dealing drugs from a mobile home in Indian Township, Maine, where

17

five school-aged children were living, ranging in age from seven to fifteen. *Tr. of Proceedings*, *Mot. to Recons.* at 1-146 (ECF No. 147). Furthermore, Mr. Pemberton was doing so at a time when the mother of these children was herself incarcerated. *Id.* at 16:5-9. The Court considers Mr. Pemberton's decision to deal heroin from a residence where young children were present to have been reckless and callous in disregard of the impact his criminal activity would have on these five children.

Most to the point, at his sentencing hearing, the Court found that Mr. Pemberton was involved in smuggling drugs into county jail while he was incarcerated and awaiting sentence for his federal offense. *Statement of Reasons* at 1. It remains unusual for a person about to be sentenced for a serious federal drug felony to persist in attempted drug smuggling while incarcerated. Mr. Pemberton's continued involvement in the drug world while incarcerated gives the Court considerable pause about his risk of recidivism when he is released. The Court concludes that the need for adequate deterrence weighs strongly against Mr. Pemberton's release.

The Court also considered the need for just punishment and the need to protect the public. The need to protect the public from Mr. Pemberton, a strongly recidivist drug dealer, is self-evident. The need for just punishment is also obvious. Less than one year ago, the Court sentenced Mr. Pemberton to forty-six months imprisonment. By the Court's calculation, Mr. Pemberton has only served approximately 40% of his full term of imprisonment and approximately 47% of his statutory term. In light of the quantity of deadly drugs that law enforcement seized during Mr. Pemberton's

arrest, the Court finds releasing Mr. Pemberton when he has served less than half of his sentence would fail to provide just punishment for a serious offense. Thus, on balance, the 18 U.S.C. § 3553(a) factors do not support Mr. Pemberton's release.

**C.     Summary**

The Court concludes that Mr. Pemberton has not met his burden to show extraordinary and compelling reasons for his release and that the section 3553(a) factors do not support release. While Mr. Pemberton's obesity, asthma, and hepatitis C may increase his risk of serious complications from COVID-19, he refused the COVID-19 vaccine and there are no active cases of COVID-19 in his prison. Furthermore, given the need for deterrence, the nature and circumstances of the offense, the need to protect the public, and the need for just punishment, releasing Mr. Pemberton early would contravene the 18 U.S.C. § 3553(a) factors.

The Court wishes Mr. Pemberton the best and hopes he will renounce his drug-dealing and criminal ways, and will return to society a productive and law-abiding citizen. However, on the record before the Court, Mr. Pemberton is not an appropriate candidate for compassionate release. For the same reasons, the Court declines to modify Mr. Pemberton's sentence to a term of home confinement.

**V.     CONCLUSION**

The Court DISMISSES without prejudice Carlos Pemberton's Motion for Compassionate Release (ECF No. 191).

SO ORDERED.

                                            <u>/s/ John A. Woodcock, Jr.</u>
                                            JOHN A. WOODCOCK, JR.
                                            UNITED STATES DISTRICT JUDGE

Dated this 14th day of July, 2021.